MASCHOFF BRENNAN
    GILMORE ISRAELSEN & MAURIEL LLP
Sterling A. Brennan (CA Bar No. 126019)
    sbrennan@mabr.com
Christina L. Trinh (CA Bar No. 307879)
    ctrinh@mabr.com
100 Spectrum Center Drive, Ste. 1200
Irvine, CA 92618
(949) 202-1900

Jason A. Crotty (CA Bar No. 196036)
    jcrotty@mabr.com
450 Sansome Street, Suite 1005
San Francisco, California 94111
(415) 738-6228

Attorneys for Defendants YAO YUE and IOP SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X CORP., a Nevada corporation, | Case No. 3:25-cv-10423-TLT |
| Plaintiff, | **DEFENDANTS' ANSWER TO COMPLAINT** |
| v. | |
| YAO YUE, an individual; IOP SYSTEMS, INC., a Delaware corporation; and DOES 1-10, inclusive, | JURY TRIAL DEMANDED |
| Defendants. | |

Defendants Yao Yue and IOP Systems, Inc. ("Defendants"), for themselves alone and no other person or party, hereby answer Plaintiff X Corp.'s ("X") complaint, as follows:

## NATURE OF THE CASE

1. Denied.

2. Denied.

3. Defendants admit that Paragraph 3 contains content from the IOP Systems website.  Defendants deny the remaining allegations of Paragraph 3.

4. Denied.

5. Denied.

6. Denied.  Further, Defendants are without information or knowledge regarding X's alleged investigation and therefore deny the allegations in Paragraph 6 on that basis as well.

7. Denied.

8. Denied.

## PARTIES

9. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore deny them.

10. Defendants admit that Yue is a former employee of Twitter, and later X, and was based in the San Francisco office.  Defendants further admit that Yue is a resident of San Francisco County, California.

11. Admitted.

12. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 12 and therefore deny them.

13. Denied.

## JURISDICTION AND VENUE

14. Provided that X's allegation that it is a Nevada corporation with its principal place of business in Texas is accurate, Defendants admit that this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and that it has diversity subject matter jurisdiction over claims arising

CASE NO. 3:25-CV-10423-TLT                          DEFENDANTS' ANSWER TO COMPLAINT

under state law under 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15.     Defendants admit this Court has personal jurisdiction over Yue because she resides in this District and IOP Systems because it is headquartered in this District and that the alleged acts — many of which Defendants deny — occurred within this District.  Defendants deny that Yue trespassed on X's premises or "exfiltrated" X property.  To the extent there are additional allegations contained in Paragraph 15, Defendants deny them.

16.     Defendants admit this Court has personal jurisdiction over IOP Systems because IOP Systems is headquartered in this District and has contacts with the State of California and this District.  Defendants deny that IOP Systems was founded using source code and data stolen from X by Yue.  To the extent there are additional allegations contained in Paragraph 16, Defendants deny them.

17.     For purposes of this action, Defendants admit venue is proper in this District.

## FACTUAL BACKGROUND

### I.     X Corp.'s Business.

18.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 18 and therefore deny them.

19.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 19 and therefore deny them.

20.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 20 and therefore deny them.

21.     Defendants admit that X (and previously Twitter) employed a team called the Infrastructure Optimization ("IOP") Team, which worked on complex technical issues in an attempt to improve performance and efficiency for the platform and that the IOP Team sought to detect operational inefficiencies within X's infrastructure.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 and therefore deny them.

/ / /

CASE NO. 3:25-CV-10423-TLT                    DEFENDANTS' ANSWER TO COMPLAINT

22.    Defendants admit that the IOP Team made use of tools for collecting and analyzing system performance data, including measurements related to performance, speed, and resource usage.  Defendants further admit that those tools included dashboards for viewing performance.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and therefore deny them.

**II.    Yue's Employment with X Corp.**

23.    Defendants admit that Twitter (now X) hired Yue on or about November 1, 2010, and that she was promoted numerous times, most recently in 2021 to Principal Software Engineer of the IOP Team.

24.    Defendants admit that before October 2022, X's engineering department had three pillars: Goldbird, Bluebird, and Redbird.  Defendants further admit that within Redbird were several organizations, including Platform, which was responsible for internal software systems.  Defendants deny that the IOP Team determined the amount of cell phone and data center capacity and cloud capacity X needed or the optimization of its cloud usage.  Defendants admit that beginning in or about June 2022, Yue reported to Sandy Strong, X's Director of Performance Engineering.  To the extent there are additional allegations in Paragraph 24, they are denied.

25.    Defendants admit that Yue, as the Principal Software Engineer, oversaw several software engineers and one site reliability engineer, including:  Brian Martin, Rebecca Isaacs, Xi Yang, Sean Lynch, and Mihir Nanavati.  Defendants further admit that Yue's team developed analyses for metrics to optimize system responsiveness and resource allocation.  To the extent there are additional allegations in Paragraph 25, they are denied.

26.    Denied.

**III.    Yue's Termination from X Corp.**

27.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 28 and therefore deny them.

28.    Defendants admit that on November 10, 2022, Yue quote tweeted Zoe Schiffer, a journalist covering X.  Defendants further admit that Paragraph 28 contains an image of Yue's

3

CASE NO. 3:25-CV-10423-TLT                              DEFENDANTS' ANSWER TO COMPLAINT

tweet. Defendants deny that Yue tweeted at Ms. Schiffer so as to maximize visibility of her post. To the extent there are additional allegations in Paragraph 28, they are denied.

29. Defendants admit that at the time of her tweet, Yue had several thousand followers, including current or former X employees, and that people "liked," "re-tweeted," commented on, or saved her tweet.

30. Defendants are without information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 30 and therefore deny them.

31. Denied.

**IV.    Yue's Attempts to Have X Corp. "Open Source" Data After Her Termination.**

32. Defendants deny that Yue "exfiltrated" X source code or made comments that she had "exfiltrated" X source code to benefit her new company. Defendants state that at the request of a former Twitter colleague, Yue inquired about the status of a pending open-sourcing request initiated by the former Twitter colleague. That request had obtained other signoffs, including legal and security, but amid the confusion and turmoil of the Musk Acquisition, including large-scale resignations and terminations, it was difficult to locate someone still at X who was familiar with the request. Defendants are without information or knowledge sufficient to form a belief as to the truth of any remaining allegations in Paragraph 32 and therefore deny them.

33. As set forth above, Yue assisted a former colleague in attempting to finalize the open-sourcing of certain X information, and that effort included reaching out to Ms. Strong. Defendants are without information or knowledge sufficient to form a belief as to the truth of any remaining allegations in Paragraph 33 and therefore deny them.

34. As set forth above, prior to the Musk Acquisition, virtually all of the necessary signoffs had been obtained and one final sign-off was required to complete the open-source process. Defendants admit that Yue contacted Ms. Strong regarding this process. Defendants are without information or knowledge sufficient to form a belief as to the truth of any remaining allegations in Paragraph 34 and therefore deny them.

35. Defendants admit that Yue attended a holiday party dinner party at Ms. Strong's house in December 2022, but Defendants deny the remaining allegations of Paragraph 35.

4

36. Defendants admit that on December 20, 2022, Yue messaged Ms. Strong regarding the process to open-source certain X information and to report back "what Shannon says." Defendants are without information or knowledge regarding Ms. Strong's thoughts, impressions, beliefs, or feelings, and therefore deny the remaining allegations in Paragraph 36.

37. Defendants admit that Yue reached out to Ms. Strong in June 2023, regarding the "opensource project." Defendants are without information or knowledge sufficient to form a belief as to the truth of any remaining allegations in Paragraph 37 and therefore deny them.

**V.    X Corp.'s Investigation of Yue Reveals Her Theft of X Corp.'s Trade Secrets.**

38. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 38 and therefore deny them.

39. Defendants are without information or knowledge regarding the results of X's alleged investigation and therefore deny the allegations in Paragraph 39. Defendants nevertheless respond that Yue was contacted by Ms. Schiffer regarding the Musk acquisition of Twitter after X terminated her employment, and that Ms. Schiffer interviewed her some time later. Defendants further note that Yue is identified by name in Ms. Schiffer's subsequent book "Extremely Hardcore: Inside Elon Musk's Twitter" published in 2024. To extent there are additional allegations in Paragraph 39, they are denied.

40. Defendants are without information or knowledge regarding X's beliefs and therefore deny the allegations in Paragraph 40. Defendants further refer to their response to Paragraph 39, *supra*.

41. Defendants are without information or knowledge regarding X's beliefs or concerns and therefore deny the allegations in Paragraph 41. Defendants further respond that Yue — like many other former Twitter employees — regularly used the service elevator to enter the Twitter facility. Defendants further admit that after her employment had been terminated, Yue did so to gather her personal belongings (*e.g.*, books, Legos, etc.). Indeed, Yue was admitted to Twitter offices by several of her then-former colleagues, including Ms. Strong. Defendants deny that Yue "sneak[ed]" into a Twitter facility.

///

42. Defendants are without information or knowledge regarding X's alleged investigation and therefore deny the allegations in Paragraph 42. Defendants respond that on or about December 4, 2022, Yue downloaded information from her Twitter laptop, primarily personal documents such as her tax returns and other non-Twitter information. Defendants deny that Yue "exfiltrated" to a USB drive 6 million lines of X's proprietary and confidential source code.

43. Denied that Yue "exfiltrated" 6 million lines of X's proprietary and confidential source code. Defendants further respond that aspects of the IOP Team's work were posted on employee blogs (that were available to persons outside Twitter), discussed at professional gatherings (that included persons outside Twitter), and were the subject of public presentations, all with Twitter's approval. Defendants further note that some of that work was inspired by, or coincided with, work that had already been published and publicly available. Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required. Defendants deny that X has adequately identified and alleged any trade secrets. Defendants are without information or knowledge sufficient to form a belief as to the truth of any remaining allegations in Paragraph 43 and therefore deny them.

44. Defendants are without information or knowledge regarding X's thoughts, understandings, or concerns and therefore denies those allegations in Paragraph 44. Defendants admit that Yue conducted Google searches relating to file transfers and that she connected USB drives to her laptop to download materials, including her personal tax returns. Defendants further refer to their response to Paragraph 42, *supra*. Defendants are without information or knowledge sufficient to form a belief as to the truth of any remaining allegations in Paragraph 44 and therefore deny them.

45. Defendants are without information or knowledge regarding X's thoughts, understandings, or concerns and therefore deny the allegations in Paragraph 45. Defendants nevertheless respond that the project that resulted in the LatenSeer paper was started at Twitter in early 2021, by a Twitter research intern (Yazhuo Zhang) whose part-time employment at Twitter lasted from February 2021 to May 2022. The project that resulted in LatenSeer was submitted to

6

USENIX NSDI'23 on or before April 13, 2022, when three of the co-authors were still employed by Twitter. The original submission used Twitter traces as the only industry dataset but was anonymized prior to submission. The submission accepted by SoCC'23 also included Alibaba traces which were published in 2021 and 2022. The final submission included updated author affiliations through footnotes attributing the work to each author's employment at Twitter. Defendants further respond that the summary in the Complaint is inaccurate or incomplete.

46. Defendants refer to their response to Paragraph 45, *supra*. Defendants are without information or knowledge sufficient to form a belief as to the truth of any remaining allegations in Paragraph 46 and therefore deny them.

47. Defendants refer to their response to Paragraph 45, *supra*. Defendants admit that the quotations from the referenced paper appear to be accurate, albeit incomplete. To the extent there are additional allegations contained in Paragraph 47, Defendants deny them.

48. Denied.

**VI.    X Corp.'s Investigation Reveals Other IOP Systems Executives' Wrongdoing.**

49. Defendants are without information or knowledge regarding X's alleged investigation and therefore deny the allegations in Paragraph 49.

50. Defendants are informed and believe that Martin did not directly respond to the "Fork in the Road" email and continued to work (through and including December 7, 2022) under the assumption that he remained a Twitter employee until told otherwise, and that he continued to have the access and benefits of a Twitter employee. Defendants further note that the employment status of many Twitter employees was unclear in the aftermath of the Musk Acquisition. Defendants are without sufficient information or knowledge to admit or deny the remaining allegations of Paragraph 50, and on that basis deny them.

51. Defendants are informed and believe that Martin, while employed at X, was a member of X's "GitHub Organization." Defendants further admit that he was a "maintainer" of the Pelikan repository. Defendants note that a "maintainer" of an X GitHub account need not be a current employee of X and that former employees are often "maintainers" based on their

unique understanding of the code of the underlying project.  To the extent there are remaining allegations of Paragraph 51, they are denied.

52.    Defendants are without information or knowledge regarding X's alleged investigation and therefore deny the allegations in Paragraph 52.  Specifically, Defendants deny that Brian Martin did anything inconsistent with his role as a maintainer of the Pelikan source code project on GitHub.  Defendants further respond that changes and other information (*e.g.*, Readme) on GitHub are public.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52 and therefore deny them.

53.    Denied.

54.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 54 and therefore deny them.

55.    Defendants are without information or knowledge regarding X's alleged investigation and therefore deny the allegations in Paragraph 55.

56.    Denied.  Defendants further respond that there was no pending or reasonably anticipated litigation at the time of the alleged conduct in January 2023, and therefore no duty to preserve existed.  To the extent the allegations concern the conduct of Mr. Martin, who is not a party to this action, Defendants do not speak on his behalf.

**VII.    IOP Systems Uses X Corp.'s Trade Secrets.**

57.    Defendants admit that IOP Systems was incorporated in Delaware on or about December 20, 2022, and that it was founded by, among others, Yue, Martin, and other former X employees.  Defendants further admit that the IOP Systems website states that the founders "met while working for Twitter."  To the extent there are additional allegations contained in Paragraph 57, Defendants deny them.

58.    Admitted.

59.    Defendants refer to their response to Paragraph 21, *supra*.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any

protectable trade secrets.  To the extent there are additional allegations contained in Paragraph 59, Defendants deny them.

60.     Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets.  Defendants deny the remaining allegations of Paragraph 60.

61.     Defendants admit that Yue has stated that the IOP Team saved Twitter over $100 million.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets.  Defendants deny the remaining allegations of Paragraph 61.

## VIII.   X Corp Goes to Great Lengths to Protect Its Trade Secrets.

62.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 62 and therefore deny them.

63.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 63 and therefore deny them.

64.     Defendants admit as a Principal Software Engineer of Redbird, Yue had access to confidential and proprietary Twitter information, including source code.  To the extent there are additional allegations contained in Paragraph 64, Defendants deny them.

65.     Admitted.

## FIRST CAUSE OF ACTION

### (Trade Secret Misappropriation – YUE and IOP SYSTEMS)

66.     Defendants respond that Paragraph 66 does not contain any factual averments that would require a response.  To the extent a response is required, Defendants incorporate the preceding paragraphs set forth herein by reference.

67.     To the extent Paragraph 67 contains mere legal conclusions, no response is required.  Defendants deny that X has adequately identified and alleged any protectable trade

9

secrets and that any such trade secrets were misappropriated by Defendants.  To the extent there are additional allegations contained in Paragraph 67, Defendants deny them.

68.    Paragraph 68 contains mere legal conclusions and no response is required.

69.    Paragraph 69 contains mere legal conclusions and no response is required.

70.    Paragraph 70 contains mere legal conclusions and no response is required.

71.    Paragraph 71 contains mere legal conclusions and no response is required.

72.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 72 and therefore deny them.  Further, Defendants deny that X has identified and adequately alleged any protectible trade secrets.

73.    To the extent Paragraph 73 contains mere legal conclusions, no response is required.  Defendants further deny that X has adequately identified and alleged any protectable trade secrets.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 73 and therefore deny them.

74.    Defendants admit as a Principal Software Engineer of Redbird, Yue had access to confidential and proprietary Twitter information, including source code.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets.

75.    Defendants are without sufficient information or knowledge regarding X's post-termination security measures and therefore deny the allegations in Paragraph 75.  Defendants deny that Yue "exfiltrated" 6 million lines of X's source code.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets.

76.    Defendants refer to their response in Paragraph 42, *supra.*  Defendants deny Yue copied any X protectable trade secrets.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets.

77.    Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets.  To the extent there are additional allegations contained in Paragraph 77, Defendants deny them.

78.    Denied that any protectable trade secrets were misappropriated by Defendants.  Defendants are without information or knowledge regarding X's alleged investigation and therefore deny the allegations in Paragraph 78.

79.    Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets and that any such trade secrets were misappropriated by Defendants.

80.    Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets and that any such trade secrets were misappropriated by Defendants.

81.    Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 81 and therefore deny them.

82.    Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets and that any such trade secrets were misappropriated by Defendants.  Defendants are without information or knowledge regarding X's disclosure practices and therefore deny the remaining allegations in Paragraph 82.

83.    To the extent Paragraph 83 contains mere legal conclusions, no response is required.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately

identified and alleged any protectable trade secrets and that any such trade secrets were misappropriated by Defendants.

84.    To the extent Paragraph 84 contains mere legal conclusions, no response is required.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets and that any such trade secrets were misappropriated by Defendants.

85.    To the extent Paragraph 85 contains mere legal conclusions, no response is required.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets and that any such trade secrets were misappropriated by Defendants.

86.    To the extent Paragraph 86 contains mere legal conclusions, no response is required.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets, that any such trade secrets were misappropriated by Defendants, or that X is entitled to any of the identified relief.

87.    Defendants respond that Paragraph 87 does not contain any factual averments that would require a response.  To the extent a response is required, Defendants deny that X is entitled to any of the identified relief.

**SECOND CAUSE OF ACTION**

**(Violation of Cal. Pen. Code § 502 - YUE)**

88.    Defendants respond that Paragraph 88 does not contain any factual averments that require a response.  To the extent a response is required, Defendants incorporate the preceding paragraphs set forth herein by reference.

89.    Defendants respond that Paragraph 89 does not contain any factual averments that require a response.  To the extent a response is required, Defendants deny that X is entitled to any of the identified relief.

CASE NO. 3:25-CV-10423-TLT                    DEFENDANTS' ANSWER TO COMPLAINT

90.     Denied.

91.     Denied.

92.     To the extent Paragraph 92 contains mere legal conclusions, no response is required.  Whether information qualifies as a protectable trade secret is a legal question and therefore no response to such an assertion is required.  Defendants deny that X has adequately identified and alleged any protectable trade secrets.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

## THIRD CAUSE OF ACTION

### (Conversion – YUE and IOP SYSTEMS)

97.     Defendants responds that Paragraph 97 does not contain any factual averments that would require a response.  To the extent a response is required, Defendants incorporate the preceding paragraphs set forth herein by reference.

98.     Defendants admit that operation of X's platform can create confidential data and traces that provide some information regarding how X's systems are configured and operating at the time the traces are recorded.  Defendants further admit that such data and traces do not necessarily derive independent value by virtue of being secret.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 98 and therefore deny them.

99.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 99 and therefore deny them.

100.    Denied.

101.    Denied.

102.    Defendants deny that X has requested "confirmation" whether any X confidential data or traces are in Defendants' possession.  Defendants are without information or knowledge

13

CASE NO. 3:25-CV-10423-TLT                                    DEFENDANTS' ANSWER TO COMPLAINT

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 102 and therefore deny them.

103.　Denied.

104.　Denied.

105.　Denied.

**FOURTH CAUSE OF ACTION**

**(Unjust Enrichment – IOP SYSTEMS)**

106.　Defendants respond that Paragraph 106 does not contain any factual averments that would require a response. To the extent a response is required, Defendants incorporate the preceding paragraphs set forth herein by reference.

107.　Denied.

108.　Denied.

109.　Denied.

**FIFTH CAUSE OF ACTION**

**(Unlawful/Unfair/Fraudulent Business Practices – YUE and IOP SYSTEMS)**

110.　Defendants respond that Paragraph 110 does not contain any factual averments that would require a response. To the extent a response is required, Defendants incorporate the preceding paragraphs set forth herein by reference.

111.　Denied.

112.　Denied.

113.　Denied.

114.　Denied.

115.　Denied.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE:**

**(ALLEGED TRADE SECRETS WERE READILY ASCERTAINABLE)**

X's claims fail because the alleged trade secrets or confidential information (albeit inadequately identified and alleged in the Complaint) are publicly disclosed, ascertainable from

14

publicly disclosed information, are otherwise readily ascertainable through proper means, are matters of general knowledge in the trade, or are matters known by persons in the trade.

## SECOND AFFIRMATIVE DEFENSE:
### (INDEPENDENT DEVELOPMENT)

X's claims fail because IOP System's code was independently developed without using any of X's alleged trade secret or confidential information, and without breach of any other obligation allegedly owed by Defendants to X.

## THIRD AFFIRMATIVE DEFENSE:
### (ALLEGED TRADE SECRETS WERE NOT PROTECTED)

X's claim fails because X failed to make adequate efforts to maintain the secrecy of the alleged trade secrets or confidential information that are the basis of its claims (albeit X fails in its Complaint to adequately identify and allege its purported trade secrets).

## FOURTH AFFIRMATIVE DEFENSE:
### (LACHES)

X's claims are barred by the doctrine of laches because Plaintiff unduly delayed in bringing its claims to the prejudice of Defendant.

## FIFTH AFFIRMATIVE DEFENSE:
### (WAIVER, ACQUIESCENCE, OR CONSENT)

X's claims are barred by the doctrines of waiver, acquiescence, and/or consent.

## SIXTH AFFIRMATIVE DEFENSE:
### (UNCLEAN HANDS)

X's claims for injunctive relief and other equitable relief are barred by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE:
### (NO INJUNCTIVE RELIEF)

X is not entitled to any injunctive relief because, among other things, any alleged injury to X is not immediate or irreparable, and X has an adequate remedy at law.

## EIGHTH AFFIRMATIVE DEFENSE:

## (NO INJURY)

X is not entitled to relief because it has not suffered any cognizable injury attributable, in whole or in part, to the acts or omissions of Defendants.

## NINTH AFFIRMATIVE DEFENSE:

## (STATUTE OF LIMITATIONS)

X's claims are barred by the applicable statutes of limitations.

## TENTH AFFIRMATIVE DEFENSE:

## (ADDITIONAL DEFENSES)

In addition to the defenses set forth above, Defendants reserve the right to raise, assert, rely upon, or add any new or additional defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the laws of the United States, the laws of the state of California or any other governing jurisdictions that may exist or in the future be applicable based on discovery and further factual investigation, and reserve the right to amend any and all defenses set forth above as discovery proceeds.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Defendants hereby demand a trial by jury on all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendants asks this Court to enter judgment against X and grant the following relief:

1.  That X take nothing by the Complaint;

2.  That X's Complaint (and the claim alleged therein) be dismissed in its entirety with prejudice;

3.  That Defendants be awarded their reasonable attorneys' fees, costs, and other expenses permitted by law, including 18 U.S.C. § 1836(b)(3)(D); and

4.  That the Court award such other relief as it may deem proper and just.

16

DATED: February 6, 2026          Respectfully submitted,

MASCHOFF BRENNAN
     GILMORE ISRAELSEN & MAURIEL, LLP

By: /s/ Sterling A. Brennan
     Sterling A. Brennan
     Jason A. Crotty
     Christina L. Trinh

Attorneys for Defendants YAO YUE and IOP SYSTEMS, INC.

17